IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 18, 2017

### JOSHUA MATTHEW CLINE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 41300063        William R. Goodman III, Judge**

_____

### No. M2017-00168-CCA-R3-PC

_____

Petitioner, Joshua Matthew Cline, appeals the denial of his petition for post-conviction relief from his April 2013 convictions for two counts of rape of a child. Petitioner argues that he received ineffective assistance of counsel. After a review of the record and the briefs of the parties, we determine Petitioner has failed to establish that he received ineffective assistance of counsel. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Joshua Matthew Cline.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; John W. Carney, District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Factual and Procedural Background*

On March 4, 2008, Petitioner raped his adopted daughter, a six year-old child. *State v. Joshua Matthew Cline*, No. M2013-01846-CCA-R3-CD, 2014 WL 1281526, at *1 (Tenn. Crim. App. Mar. 31, 2014), *perm app. denied* (Tenn. Aug. 27, 2014). The rape was recorded on video, and Petitioner was convicted in federal court of production of

child pornography and sentenced to twenty-seven years and three months for that offense. *Id.* In state court, Petitioner entered an open guilty plea to two counts of rape of a child, and the trial court sentenced him to consecutive terms of twenty-five years in the Tennessee Department of Correction.[1] *Id.* Petitioner challenged the imposition of consecutive sentencing as an abuse of discretion by the trial court, but this Court affirmed the trial court's judgments. *Id.*

At Petitioner's plea hearing, the prosecutor stated that Petitioner's conviction was based upon a video containing footage of the victim being raped by Petitioner. Subsequently, the trial court asked Petitioner if he understood that he would be pleading to multiple felonies and that the trial court would make a sentencing determination independently. Petitioner responded, "Yes, Your Honor." The trial court informed Petitioner of his right to a jury trial, his right to confront witnesses, his right to call witnesses, his right to remain silent, his right to testify, and his right to an appeal. Each time that the trial court informed Petitioner of a right, the trial court asked if Petitioner understood that he would be giving up that right by pleading guilty. Each time, Petitioner stated, "Yes, Your Honor." The trial court asked Petitioner if he committed each rape, and both times Petitioner replied, "Yes, Your Honor." Then, the trial court found Petitioner guilty of two counts of rape of a child and dismissed the other charges brought against him.

At the sentencing hearing, the Petitioner's ex-wife testified about the impact that Petitioner's action had on both her and the victim. With regard to the victim, she stated,

> [It has] affected every part of her life as well. She not only lost her childhood, she's lost her innocence, she lost her purity, she lost her father[-]figure as well, and she has no concept of what that's supposed to be really. She's [a] preteen now and trying to have her understand what a relationship is supposed to be like is very difficult and it's a day-to-day struggle with us.

Petitioner also testified at the sentencing hearing and spoke about his struggles during childhood and his military service. Trial counsel asked, "Why did you plead guilty?" Petitioner responded, "Because I really don't want my family to go through this. . . . I want them to be able to move on; I want to move on. . . . I want to do what I can to help them recover and be able to move on in life." When asked if he had anything else to say, Petitioner said, "Nothing coming to mind." After argument by the State and trial counsel, the trial court sentenced Petitioner to twenty-five years on each count and ordered the

---

[1] The judgments for Petitioner's two counts of rape of a child were not included in the record on Petitioner's appeal of his denial of post-conviction relief. However, this Court takes judicial notice of the judgments that were contained in the record on direct appeal.

sentences to run consecutively. However, the sentence in count one was run concurrently with Petitioner's federal sentence.

Petitioner filed a pro se petition for post-conviction relief on August 31, 2015. Seven months later, his appointed counsel filed an amended petition. The post-conviction court held a hearing.

Because Petitioner was incarcerated in a federal facility in Petersburg, Virginia, he testified via electronic deposition. He could recall meeting with trial counsel only two times over four to five months but conceded that they might have met a "couple" times more. Further, he claimed that he did not meet with anyone else from trial counsel's law office. Petitioner remembered the trial court telling him about his rights and how he would be waiving those rights by pleading guilty. He recounted that when the trial court asked if he knowingly and voluntarily pled guilty, he responded, "I understand and I do."

Petitioner maintained that he had never seen the video and that "there was really no reference to [the video] as well." But, Petitioner admitted that he was aware of the existence of a video and that trial counsel discussed the existence of the video with him. Petitioner claimed that trial counsel did not properly investigate whether the video was obtained improperly and subject to suppression. Petitioner asserted that he would not have pleaded guilty if he had seen the video and other documents that were allegedly kept from him. One of those documents was the report of the Department of Children's Services ("DCS"), which Petitioner had "heard" contained no admission by the victim that she was the child in the video. Petitioner maintained that if he had been provided all of the information, he would have gone to trial because he "got basically, what [he] would have gotten had [he] gone to trial, which is a life sentence."

With regard to his representation by trial counsel Petitioner went on to say:

I don't really see how she really represented me. She didn't question the witnesses on the stand during sentencing; didn't provide, really any support other than sitting there . . . [n]o mitigating factors were presented; I wasn't given information as far as what evidence was supposed to be used or planned to be used. She wouldn't answer correspondence.

Petitioner admitted that trial counsel objected to some testimony during the sentencing hearing and the testimony was excluded. He further admitted that trial counsel put on mitigation evidence regarding his childhood, his mother's mental health issues, and Petitioner's history as a victim during his childhood. Despite the introduction of this evidence, Petitioner indicated that he wanted to talk about his experiences in the military dealing with post-traumatic stress disorder, anxiety, and depression. Petitioner claimed that he was aware that the trial court could run his sentence consecutively to his

federal sentence but that he was not aware that the trial court could run his state sentences consecutively to one another. He says that he understood the total sentence on both counts to be "25-years period[.]"

Trial counsel testified at the post-conviction hearing that she had been a licensed attorney since 2005 and that she had handled two to three child sex cases a month at the public defender's office. Trial counsel said that she met with petitioner "at least six times" via video monitor and that it was her practice to meet with clients in person on serious cases like this one. According to trial counsel, during her meetings with Petitioner, she discussed the contents of the child forensic report and the DCS records. Further, she said that those documents were provided to Petitioner as a part of his discovery package. Trial counsel indicated that she viewed the video and discussed its contents with Petitioner. Trial counsel conducted research and determined that the video was seized legally.

Trial counsel testified that she recognized that Petitioner was serving a federal sentence and investigated whether there was a bar to prosecution by the State. Trial counsel conducted multiple plea negotiations with the State which culminated in the State agreeing to the plea ultimately entered by Petitioner. She stated that Petitioner pled guilty to production of the video in federal court, and the contents of the video revealed that the person doing the filming was also the person engaging in the criminal act. Trial counsel went on to say that the victim was identifiable from the contents of the video. Trial counsel said that she discussed the case with Petitioner and told him that it was likely that he would be convicted on all of his charges if the case went to trial. She further explained that the maximum sentence for a conviction on all counts could be over 100 years. In trial counsel's opinion, the best shot at getting concurrent sentencing was to do an open plea. Trial counsel recounted that Petitioner told her that "he wanted to take a guilty plea, because he didn't want to put the child through anymore and his wife — ex-wife through anymore[.]"

The post-conviction court found that Petitioner knowingly and intelligently entered his guilty plea and that trial counsel provided effective assistance. Petitioner now appeals, arguing that trial counsel rendered ineffective assistance and that Petitioner's guilty plea "was not rendered knowing and voluntary, fully understanding the ramifications of said plea." The State responds that Petitioner received effective assistance of counsel and that Petitioner's guilty plea was voluntary.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to

prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). Because Petitioner's ineffective assistance of counsel claims relate to his guilty plea, in order to show prejudice he "must prove that counsel performed deficiently and 'there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 217 (Tenn. 2009) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Hill*, 474 U.S. at 58. (quoting *Strickland*, 466 U.S. at 691).

In this case, trial counsel met with Petitioner multiple times. During those meetings, trial counsel and Petitioner discussed the DCS report, the contents of the video, implications of going to trial, and Petitioner's sentencing exposure. Trial counsel negotiated a plea agreement with the State and provided advice to Petitioner on whether to take the deal. Petitioner took the deal because "he didn't want to put the child through anymore and his wife—ex-wife through anymore[.]" At the sentencing hearing, trial counsel objected to inadmissible testimony, conducted a direct examination of Petitioner, entered letters on behalf of Petitioner into evidence, and argued on Petitioner's behalf. Trial counsel's actions met an objective standard of reasonableness. Trial counsel was not deficient.

Moreover, Petitioner has failed to show that he was prejudiced by trial counsel's actions. Petitioner admitted to raping the victim, and at the sentencing hearing, he stated that he was pleading guilty to relieve the burden on his family. Now, in hindsight, Petitioner claims that he would have not have pled guilty. None of the deficiencies in representation alleged by Petitioner create a reasonable probability that he would not have pled guilty.

Petitioner's brief contains an issue statement which, at best, can be described as inartfully drafted. This issue statement mentions that Petitioner's "guilty pleas was [sic] not rendered knowing and voluntary," and the State's brief contains an independent argument that Petitioner's guilty plea was knowing and voluntary. Yet, the issue statement is the only time that the phrase "knowing and voluntary" appears in Petitioner's brief. No argument is made regarding the voluntariness of Petitioner's plea nor is any case law cited on that issue. Thus, any claim that Petitioner's guilty pleas were not knowing and voluntary that exists independently of his ineffective assistance of counsel claim is waived. *See* Tenn. Ct. Crim. App. R. 10(b) (stating "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

## *Conclusion*

For the foregoing reasons, the judgments of the post-conviction court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE